UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80230-CIV-DMM-MIDDLEBROOKS/JOHNSON

ERNEST RANDOLPH ERB, III,
and MICHELLE ANN ERB,

    Plaintiffs,

vs.

PALM BEACH COUNTY SHERIFF'S
OFFICE, SHERIFF RIC BRADSHAW,
JEFFREY POMERANTZ,and TIMOTHY
DALY,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon the Defendants' Motion for Summary Judgment (DE 13). The Motion was filed on August 18, 2008 making the response due on or before September 5, 2008. Plaintiffs failed to file any response. The Court accordingly issued an Order to Show Cause why the Defendants' properly supported Motion should not be granted. On September 19, 2008, the Plaintiffs asserted that they had not ever received the Motion, and that due to poor health, they had been unable to effectively prosecute this action. They asserted that they were in the process of obtaining legal counsel to assist them and requested more time to respond. The Plaintiffs were granted an extension through October 5 within which to obtain counsel and/or file a response to the Defendants' Motion. No attorney has made an appearance, and on October 6, 2008, the Plaintiffs filed a *pro se* response to the Defendants' Motion. I note that the response was not signed by Plaintiff Ernest Randolph Erb, but was rather signed only by

Plaintiff Michelle Erb, purportedly on behalf of Plaintiff Ernest Randolph Erb as well as on behalf of herself.

This action was commenced in the Circuit Court of the Fifteenth Judicial Circuit, Civil Division, in and for Palm Beach County, Florida on February 7, 2008.  The Complaint did not have any individual claims, but alleged that "the following causes of action exist: Negligent Hiring and Retention, Intentional Infliction of Emotional Distress, False Imprisonment, Physical Injury leading to permanent physical Impairment, Defamation, Sexual Harassment, Violations of Personal Civil, State and Federal Constitutional Rights.  The Defendants removed the complaint from the State Court premising jurisdiction on the Plaintiffs' claims that their constitutional rights had been violated.

The following facts are taken from the Complaint and are merely the allegations as set forth by Plaintiff.  On February 7, 2004, Deputy Daly pulled the Plaintiffs over due to an expired tag.  Deputy Daly and Pomerantz 'unlawfully and maliciously attacked Plaintiffs in a manner that they knew could cause permanent physical injury."  Both Plaintiffs were injured in the attack.  The Deputies "unlawfully imprisoned the defendants for hours longer than necessary in an effort to get their stories straight," and the Plaintiffs were confined for hours after they were cleared for release.  They were also actively barred from contact with their legal counsel.

Plaintiffs were thereafter charged with resisting arrest and obstructing an officer, and were subsequently acquitted.  Deputy Pomerantz treated Ms. Erb in an abusive and threatening manner, and Deputy Daly made vulgar sexual gestures towards her - these incidents have caused her nightmares and other permanent problems.  The Sheriff's Office continued to employ Deputy Pomerantz after the arrest of Plaintiffs and disregarded sworn testimony against him.  The

Sheriff's Office also hired Deputy Daly despite his having a long history of dishonest and criminal behavior, and further, the Sheriff's Office failed to investigate a "clear misstatement" on his employment application. The Sheriff's Office ("PBSO") conducted a "sloppy and reckless investigation in this case, which led to the continued criminal prosecutions," and it also made a "false statement to the media" thereby damaging Plaintiffs' reputations.

The deputies both used physical force against the Plaintiffs, and an officer sent to conduct an interrogation regarding the use of force failed to interview Plaintiffs or assess their injuries. The officers were wrongfully exonerated, and retained despite their wrongful conduct. Ms. Erb's injuries led to her missing work, and the aggravation of a duodenal ulcer. She suffered injuries to her buttocks which have required multiple surgeries and suffers from post traumatic disorder. Mr. Erb wound up in the intensive care unit at JFK hospital where he needed multiple blood transfusions. He lost his job due to missed work, has suffered an extensive period of unemployment, and has been unable to secure employment that compensates him as much as his previous employment.

**Legal Standard**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865,

871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)("[T]he dispute about a material fact is genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

I make the additional following observation: Local Rule 7.5.D provides that "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the opposing party's statement, if and only to the extent supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." Because no statement of Material Facts in Dispute has been filed and no factual disputes have been articulated in Plaintiff's Response, Defendant's Statement of Material facts is deemed admitted. It is from this point that I begin my analysis.

**Analysis**

In their Motion, the Defendants submit satisfactory evidence which establishes the following facts:

(1) On Saturday, February 7, 2004, Plaintiff, Ernest Erb was driving Michelle Konig's (Ms. Erb's) Honda automobile.[1]  Ms. Erb was the passenger.

(2) Deputy Daly was operating a fully marked Palm Beach County Sheriff's Office vehicle and was in full uniform when he observed Mr. Erb operating the vehicle at approximately 8:30 p.m.  Deputy Daly observed that the license plate on the vehicle was expired.[2]

(3) Deputy Daly pulled the Plaintiff's car over.

(4) Deputy Daly approached the vehicle; asked to see the driver's license, registration and proof of insurance.  Mr. Erb was yelling and moving his arms within the car, and Deputy Daly asked Mr. Erb to step out of the car.

(5) Mr. Erb refused Deputy Daly's initial request to step outside of the vehicle.

(6) Mr. Erb subsequently exited the vehicle.  Plaintiff, Ms. Erb, exited the vehicle as well.

(7) Deputy Pomerantz arrived as backup and requested that Ms. Erb either get back into the vehicle or depart the scene.  She would not get back into the vehicle, and she did not leave the scene.  She began to act aggressively, attempted to hinder Deputy Daly's investigation, and attempted to physically push past Deputy Pomerantz.  She refused multiple requests to get into the vehicle or depart the scene.  Deputy Pomerantz placed Ms. Erb under arrest for obstruction of justice pursuant to Fla. Stat. 843.02.

(8) Deputy Pomerantz attempted to place handcuffs on Ms. Erb, but she resisted, and he eventually had to take her to the ground in order to get the handcuffs on her.

---

[1] Michelle Konig married Ernest Erb and is therefore referred to as Ms. Erb herein.

[2] The Plaintiffs were apparently unaware that the tags were expired.

(9) Seeing the interaction between Ms. Erb and Deputy Pomerantz, Mr. Erb struggled with Deputy Daly and attempted to get to Ms. Erb. Deputy Daly attempted to place Mr. Erb under arrest for obstruction, but Mr. Erb resisted. Deputy Daly took Mr. Erb to the ground in order to secure handcuffs on him.

(10) Ms. Erb made several threatening statements which in essence asserted that because she was an attorney, she would see to it that he lost his job.

(11) Ms. Erb complained of knee and back pain and Deputy Pomerantz contacted Palm Beach County EMS.

(12) Ms. Erb was treated for a small abrasion on her right knee and a small abrasion on her right palm.

(13) The Plaintiffs were transported to jail by Deputy Daly.

(14) Deputy Daly is a five year veteran of the Palm Beach County Sheriff's Office. He is a sworn certified law enforcement officer who is in compliance with all of the requirements for and has passed all of the background checks for his position in accordance with Florida law.

(15) Deputy Pomerantz is a seven year veteran of the Palm Beach County Sheriff's Office. He is a sworn certified law enforcement officer who is in compliance with all of the requirements for and has passed all of the background checks for his position in accordance with Florida law.

(16) The Palm Beach County Sheriff's Office assigns only certified law enforcement officers to road patrol as required by Statute. It provides in-service training to all sworn certified law enforcement officers in excess of that required by law.

(17) It is a policy of the Palm Beach County Sheriff's Office to educate all of its road-patrol officers regarding the need to have probable cause in order to make a lawful arrest as well as the need to have reasonable suspicion in order to make a temporary detention and/or stop and frisk for investigative purposes.

(18) It is a policy of the Sheriff's Office to instruct all officers in the appropriate use of force and are specifically instructed that they are only authorized the amount of force which is reasonable and necessary under the circumstances.

(19) The Palm Beach Sheriff's Office does not have a policy, pattern or practice of tolerating either an officer's use of excessive force or his/her conducting of false arrests. It is a policy of the Sheriff's Office to sanction officers that are found to have used excessive force or to have falsely arrested someone without probable cause. Such sanctions include, but are not limited to, termination.

The Defendants have each claimed qualified immunity. In the Eleventh Circuit a defendant seeking to establish his entitlement to summary judgment as a matter of law through qualified immunity is required to establish that the defense is warranted and that no genuine issues of material fact relevant to the implicated legal questions exist. *See, Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir. 1990); *Rich v. Dollar,* 841 F.2d 1558, 1562 (11th Cir. 1988); *Hudgins v. City of Ashburn*, 890 F.2d 396, 403; Fed.R.Civ.P. 56(c).

To avoid summary judgment, an opposing plaintiff must demonstrate either that the defendant is not entitled legally to qualified immunity or show a genuine issue of material fact that impinges upon a decisive question of law. *Hutton*, 919 F. 2d at 1536; *Rich*, 841 F.2d at 1562

(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)); *Hudgins*, 890 F.2d at 404; see Fed.R.Civ.P. 56(e).

As with all other oppositions to any summary judgment motion, "the plaintiff may not rely on the facts contained in the complaint, but must raise genuine issues of material fact to counter the facts supporting a defendant's summary judgment motion based on qualified immunity." *Id.; Rich*, 841 F.2d at 1562 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986)); *Hudgins*, 890 F.2d at 404; see Fed.R.Civ.P. 56(e). "After adequate time for discovery, Rule 56(c) mandates that a summary judgment motion be granted."

With this in mind, after reviewing the Defendants' submissions of evidence, I find that the individual Defendants and the PBSO have adequately established that they are entitled to qualified immunity. Qualified immunity shields governmental officials from liability for acts taken within the scope of executing their official duties so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

Plaintiffs assert in their response to the Motion that "[t]he facts of this case are most assuredly in dispute" and set forth the following as establishing material facts which are in dispute:

1. Plaintiffs rely on the facts set out in their initial complaint and supplement them with the following additions and clarifications which Plaintiffs will be able to prove at trial;

2. According to PBSO's own files, the Sheriff's office violated their own internal hiring procedures as well as the bounds of due diligence when they hired Deputies Daly and Pomerantz.

3. Deputy Pomerantz was initially rejected when he interviewed for a position with PBSO under a previous administration. He actually failed the interview.

4. Every other police department to which Pomerantz applied also rejected him.

5. Pomerantz was only hired after there was a psychiatric override.

6. It should be noted that Pomerantz's references included a high-ranking member of the State Attorney's office to whom he was related.

7. Daly had a criminal history, which included allegations of dishonesty. The Sheriff's office did not bother to investigate the matter at all. They did not pull the files nor did they talk to a single witness to the matter.

8. Thus, Defendants cannot rely on standard operating procedures to dispute a claim of negligent hiring.

9. Qualified immunity does not apply. In fact it is not even a defense to most of plaintiffs claims, such as false imprisonment and negligence.

10. Moreover, the officers were acting outside the scope of their duties when they attacked and arrested the Plaintiffs. They were motivated by a personal grudge.

11. Deputies Daly and Pomerantz admitted under oath that they recognized Michelle Erb from a previous encounter.

12. Trial testimony will show that Deputy Pomerantz stated that he did not like defense attorneys and that he would get personal pleasure from taking her to jail.

13. Deputy Daly actually called uninvolved personnel to brag that he had arrested Michelle Erb. Daly has admitted under oath that he made calls to uninvolved personnel following the arrest. Deputy Karlecke also testified to this fact when he was deposed.

14. The officers knowingly violated the law, and they took pleasure in so doing.

15. []PBSO had created an atmosphere that encouraged Deputies to believe that they could act outside the law without fear of repercussion.

16. At the time of this event, there had been a rash of PBSO officers using excessive force and not suffering any penalty for so doing. A homeless man had even been attacked without provocation.

17. At a deposition, one of the officers testified that he was not aware of any officer in the organization in the organization being punished for excessive force.

18. [] PBSO had created a climate that encouraged this behavior due to the lack of property internal review and they are liable for the result.

19. Plaintiffs [sic] constitutional rights were violated.

20. On the night of the incident, The [sic] Officers should have issued Plaintiffs a ticket for an expired tag and released them.

21. Instead, Plaintiff Ernest Erb was illegally detained.

22. Plaintiff Michelle Erb was illegally seized when she was ordered to remain in the car.

23. Without any probable cause, the Officers attempted to illegally search and seize the Plaintiffs' trunk. When the Plaintiffs objected they were unlawfully physically attacked. There was no justification or probable cause for the officers actions.

24. The arrests were unlawful.

25. The plaintiffs were held for hours longer than would have been necessary even if it had been a legal arrest. They were actually driven in the opposite direction of the jail and left in a parking lot while the deputies compared their stories. This was false imprisonment. This can be proven through testimony and time logs.

26. The Sheriff's office sent a supervisor to the scene when they found out that an attorney had been injured. It is undisputed that said officer never even approached the plaintiffs. He never viewed their injuries nor even spoke to them. Thus, that supervisors [sic] conclusion that the officers acted appropriately was not based on due diligence and did not meet any standard of procedures.

27. PBSO committed medical negligence at the jail. PBSO was aware that Michelle Erb was injured and that she had spina bifida. When she became

> in physical distress at the jail and required medical attention Deputy Daly actually stopped it from happening. Daly has testified under oath regarding Ms. Erb's request for medical attention at the jail.
>
> 28. As a direct result of the false arrest and medical negligence Ms.Erb suffered permanent-debilitating injuries.

Pltf.'s Resp. to Def.'s Mot. For Summ. J. (unnumbered pages). Plaintiffs provide no citation to, nor submit for review, any record evidence. These conclusory allegations, as discussed below, are insufficient to create a material question of fact as to the Defendants' entitlement to qualified immunity.

As discussed above, unless an officer's conduct violates some "clearly established statutory or constitutional rights of which a reasonable person would have known," then the officer is protected from civil liability when performing discretionary functions. *See, Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Dartland v. Metropolitan Dade County*, 866 F.2d 1321 (11th Cir. 1989). Baseless suits against government officials for damages against them individually are costly not only for the defendants, but for society as a whole. *See, Bates v. Harvey,* 518 F.3d 1233 (11th Cir. 2008)*;* 518 F.3d at 1242. The social costs include 'the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. *See, Harlow,* 102 S. Ct. at 2736.

Entitlement to qualified immunity is a question of law for the courts. *Bates v. Harvey,* 518 F.3d 1233 (11th Cir. 2008); *Mitchell v. Forsyth,* 472 U.S. 511, 526 - 29, 105 S. Ct. 2806, 2816, 86 L.Ed. 2d 411 (1985). A plaintiff attempting to breach the barrier of qualified immunity must demonstrate that when the defendant acted, the law established the contours of a right so

clearly that a reasonable official would have understood that his acts were unlawful. *See, Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

It is well established that setting forth "general, conclusory allegations" or "broad legal truisms" will not satisfy a plaintiffs obligation to demonstrate that a law is clearly established. *Mitchell,* 472 U.S. at 527; *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir. 1989); *Bennet v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990). Rather, the plaintiff must produce evidence that would allow the Court to "find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.; Sims v. Metropolitan Dade County*, 972 F.2d. 1230, 1234-35 (11th Cir. 1992).

The Plaintiffs have submitted absolutely no evidence beyond their assertions tending to establish that when the deputy stopped the Plaintiffs' vehicle for having an expired tag, he was acting outside the scope of his official discretionary duties. Nor have they submitted any evidence establishing that the officers deputies lacked probable cause to first stop them due to an expired tag, or later arrest them for obstruction. Nor have they submitted and credible evidence of the excessive nature of the force used by the deputies.

The law is such that if an officer is engaged in the "lawful exercise of [his or her] legal duty," and an individual in some manner either resists or obstructs the officer from conducting his or her activities, then probable cause exists for arresting that individual for obstruction. *See N.H. v. State*, 890 So. 2d 514 (Fla. 3d DCA 2005); *Simeon v. State*, 778 So. 2d 455 (Fla. 4th DCA 2001); *M.C. v. State*, 450 So. 2d 336 (Fla. 5th DCA 1984)(holding that interfering with an officer during a legal routine stop is sufficient to charge an individual for obstruction). The

Plaintiffs have accordingly failed to meet their burden of establishing that the individual deputies are not entitled to qualified immunity for false arrest.

As for Plaintiffs assertions that the deputies violated their constitutional rights, the Supreme Court has determined that, assuming the facts as alleged by a plaintiff to be true and taken in the light most favorable to them, a court evaluating a claim of qualified immunity must "pay careful attention to the facts and circumstances of a particular case." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151, 2158 (2001). Whether an individual is actively resisting arrest is one factor the court may evaluate. The ultimate question is one of objective reasonableness. *Id.* The Court has reviewed all of the Defendants' submissions, including but not limited to the incident and arrest reports, the photo of a minuscule cut on Plaintiff Ms. Erb's hand, as well as the Palm Beach County Sheriff's Office Use of Control Report wherein five (5) separate supervisors reviewed the deputies' use of force and found it to be reasonable. After reviewing same, I find that as the Plaintiffs were resisting arrest both physically and verbally, taking them down to the ground so as to secure handcuffs was not unreasonable or excessive use of force. Absent something, anything, more than Plaintiffs claim that the deputies used excessive force, I cannot in good conscience find that Defendants are not entitled to qualified immunity. This is not a case where the plaintiffs have alleged facts which shock the conscience and scream for further inquiry. While they reference "thousands of pages of trial and deposition transcripts," they have provided the court with not even one. Additionally, I note as a factor in making my determination, that the Plaintiffs failed to appear to their properly noticed depositions, and have resisted all discovery efforts made by Defendants in these proceedings for these past eight

months.[3] Accordingly, I find that the deputies are entitled to qualified immunity on Plaintiffs' claims for excessive force.

The Plaintiffs' claims against PBSO fail for much the same reason. The. It is well established that a government entity may not be held vicariously liable for the actions of its employees under 42 U.S.C. 1983 unless a plaintiff can establish that the complained of actions were undertaken pursuant to some custom, policy, practice or procedure of the government entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As with their claims against the individual officers, the Plaintiffs cannot meet their burden of establishing that the PBSO had a custom, policy or practice of ignoring their officer's use of excessive force or conducting of false arrests without probable cause by simply making "general, conclusory allegations of a constitutional violation or by stating broad legal truisms. 'General propositions have little to do with the concept of qualified immunity.'" *Dartland,* 866 F.2d at 1323.

As with their other allegations, Plaintiffs provide no factual basis upon which the Court could determine that the Sheriff both individually and in his official capacity is not entitled to qualified immunity. Accordingly, it is

---

[3] I additionally note that the Plaintiffs' Response was not signed by Defendant Ernest Randolph Erb. Rather it was signed only by Plaintiff Michelle Erb. Pro se litigants may only represent themselves in federal court. "The competence of a layman is clearly too limited to allow him to risk the rights of others." *Fymbo v. State Farm Fire and Cas. Co*., 213 F.3d 1320, 1321 (10th Cir. 2000). Michelle Erb's responses, to the extent that they purport to respond on behalf of Mr. Erb are a legal nullity. The result then is that Mr. Erb is deemed to not have responded at all to the Defendants Motion, and the Defendants are alternatively entitled to judgment on that basis. I have, however, considered the arguments as made by Ms. Erb, and find them legally insufficient as discussed herein.

ORDERED and ADJUDGED that the Defendants' Motion for Summary Judgment be and is hereby GRANTED.  Judgment in favor of Defendants shall be entered via separate Order. The Court notes Defendants outstanding motions to compel, continue trial and for sanctions, and finds that such are due to be denied as moot.

DONE and ORDERED in Chambers, at West Palm Beach, Florida this 22nd day of October, 2008.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE